UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY<br>   378 N. Main Ave.<br>   Tucson, AZ 85701,<br><br>        Plaintiff,<br><br>   v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY,<br>   1200 Pennsylvania Avenue, N.W.<br>   Washington, DC 20460,<br><br>   and<br><br>MICHAEL REGAN, in his official capacity as Administrator, U.S. Environmental Protection Agency<br>   1200 Pennsylvania Avenue, N.W.<br>   Washington, DC 20460,<br><br>        Defendants. | Civ. No.: 1:21-cv-2210 |

**COMPLAINT FOR DECLARATORY AND OTHER RELIEF**

INTRODUCTION

1.   Polyvinyl chloride ("PVC"), commonly known as "PVC" or "vinyl," is one of the most commonly used types of plastic in the world. Found in packaging, children's toys, building materials, and hundreds of other products, PVC is ubiquitous in American life.

2. Scientists have long understood that PVC is highly toxic to human health and the environment. At every stop of its lifecycle—from production, use, and disposal—PVC results in the release of toxic chemicals that build up in the water, air, and food chain.

3. Despite its status as "one of the most hazardous consumer products ever created," PVC and its associated chemical additives are managed in much the same way as food scraps and grass clippings after disposal.

4. In recognition of this threat, on July 24, 2014, Plaintiff Center for Biological Diversity ("the Center") formally petitioned the U.S. Environmental Protection Agency ("EPA") to classify discarded PVC as hazardous waste under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901–6992k.

5. Discarded PVC satisfies the criteria for hazardous waste designation as defined by both the statute and its implementing regulations.

6. Designation of discarded PVC as hazardous waste would require the agency to revise its solid waste management guidelines to reduce the significant threats to human health and the environment arising from the improper disposal of this plastic trash.

7. In addition, the Center asked that EPA initiate rulemaking under the Toxic Substances Control Act ("TSCA") to address the serious risks associated with PVC, vinyl chloride, and phthalate plasticizers.

8. On October 24, 2014, EPA denied the TSCA portion of the petition. EPA stated at that time it was continuing to review the requests for action under RCRA.

9. Nearly seven years later, EPA has not responded to the RCRA portion of the Center's 2014 petition.

10. Accordingly, this case challenges the failure of the Defendant EPA to comply with its nondiscretionary obligations under RCRA, 42 U.S.C. § 6974(a), or alternatively, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–559, 701–706, to take final action on the Center's petition within a reasonable time.

11. RCRA expressly authorizes "any person" to seek promulgation of a new environmental rule. 42 U.S.C. § 6974. RCRA stipulates that an agency "shall take action" with respect to a petition within a "reasonable time" following its receipt and "shall publish notice of such action in the Federal Register, together with the reasons therefor." *Id.* § 6974(a). RCRA authorizes citizens to file suit against EPA to compel the completion of any nondiscretionary duty. *Id.* § 6972(a)(2).

12. The APA allows any interested person to submit a petition for the "issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e). Failure to respond to such a petition within a reasonable timeframe constitutes a violation of an agency's duty under the APA. 5 U.S.C. §§ 555(b), 706(1).

13. The Center is seeking declaratory judgment that EPA has failed to act within a reasonable timeframe and an order compelling EPA to take final action on the Center's petition for regulations to classify discarded PVC as hazardous waste.

## JURISDICTION AND VENUE

14. This court has jurisdiction over this action pursuant to the APA, 5 U.S.C. §§ 702–706; RCRA, 42 U.S.C. § 6972(a)(2); and 28 U.S.C. §§ 1331 (federal question), 1346 (action against the United States), 1361 (action to compel officer of the United States to perform his or her duties), and 2201–02 (declaratory and further relief).

15. An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201.

16. Venue is properly vested in this district pursuant to 28 U.S.C. § 1391(e) because Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred in this district. In addition, RCRA states that citizen suits against the EPA Administrator for failure to perform any nondiscretionary duty may be brought in the District Court of the District of Columbia. 42 U.S.C. § 6972(a)(2).

17. The federal government has waived sovereign immunity in this action pursuant to 42 U.S.C. § 6972(a)(2) and 5 U.S.C. § 702.

18. Pursuant to 42 U.S.C. § 6972(c), Plaintiff Center for Biological Diversity provided Defendants with notice of their RCRA violation more than 60 days prior to the commencement of this lawsuit.

## PARTIES

19. Plaintiff Center for Biological Diversity ("the Center") is a non-profit organization with more than 84,000 active members nationwide. The Center is headquartered in Arizona and maintains offices across the country, including in Washington, D.C. The Center works through science, law, and policy to secure a future for all species, great or small, hovering on the brink of extinction. The Center's mission also includes protecting air quality, water quality, and public health. In pursuit of this mission, the Center has been working to stem the environmental and public health harms from plastics production, use, and disposal throughout the United States.

20. The Center brings this action on behalf of itself and its members, many of whom have interests in a clean environment, healthy waterways, and human health that are currently

threatened by the improper disposal of PVC. The Center's and its members' interests are injured by EPA's failure to respond within a reasonable time to its petition to amend hazardous waste regulations to better address disposal of PVC. This failure constitutes an unreasonable delay within the parameters of RCRA and the APA. 42 U.S.C. § 6974(a); 5 U.S.C. §§ 555(b), 706(1). American consumers dump billions of pounds of PVC into landfills every year, where toxins from PVC migrate into waterways and harm the environment and human health. PVC pollution from disposal in landfills is knows to leach toxic vinyl chloride and phthalates into the surrounding environment, which then seep into the soil and groundwater. By failing to respond to the Center's petition—and meaningfully regulate the disposal of PVC—more pollution accumulates in the environment and harms Center's and its members' interests.

21. For example, one Center member lives near a landfill. She is harmed by the continuing accrual of PVC in the nearby landfill, where it migrates into the aquatic environment and bioaccumulates through the food chain. She is harmed by the leaching of toxic substances from disposed PVC materials into groundwater and the soil, where it contaminates her well and vegetable garden. Her interests in clean water and healthy wildlife are harmed by this contamination. She is aware of, and worried about, the risk to her own health that these toxins pose.

22. In addition, EPA's failure to provide a timely response to the Center's petition effectively subverts the ability of the Center and its members to meaningfully participate in the rulemaking process. RCRA makes clear that the public should be involved in the development, revision, and implementation of regulations regarding hazardous waste. EPA's delay causes procedural and informational injuries to the Center and its members and deprives them of informational and procedural benefits that would aid them in their efforts to protect water quality

and wildlife from PVC. Such delay also obstructs the efficacy of regulations in addressing toxic contamination from plastic waste. Accordingly, the Center and its members suffer from both procedural and informational injuries.

23. The Center's injuries are directly traceable to EPA's failure to respond to the Center's petition and EPA's delayed action to update a rule that is critical to both human health and the health of the natural environment. The tangible, procedural, and informational harms to the interests of the Center and its members are actual and concrete injuries.

24. The declaratory relief sought herein would redress the Center's and its members' injuries. An order compelling EPA to take action on the petition would remedy the Center's injuries. Plaintiff and its members will continue to be prejudiced by EPA's unlawful actions unless and until this Court provides the relief prayed for in this Complaint.

25. Defendant EPA is a federal agency charged with the implementation of RCRA. Defendant Michael Regan is the Administrator of the EPA and is sued in his official capacity. Administrator Regan directs all business of the EPA. The EPA Administrator is ultimately responsible under federal law for ensuring that the actions and decisions of the EPA comply with all applicable laws and regulations, including RCRA. EPA and Administrator Regan have the authority and ability to remedy the harm inflicted by their failure to act.

## LEGAL BACKGROUND

### Resource Conservation and Recovery Act (RCRA)

17. Congress enacted RCRA, 42 U.S.C. §§ 6901—6992k, to recognize that economic and population growth had "resulted in a rising tide of scrap, discarded, and waste materials," leading to endangerment of public health and "needless[ ]" pollution of the environment. *Id*.

§ 6901(a), (b). The law provides a comprehensive framework to ensure the safe treatment, storage, and disposal of hazardous materials. *See id.* §§ 6921–6939g.

18. "Hazardous waste" includes any discarded material or solid waste that may pose "a potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed." 42 U.S.C. § 6903(5).

19. EPA has developed criteria governing the identification and listing of hazardous wastes. These regulations authorize EPA to classify as hazardous waste any solid waste that typically contains a designated "toxic constituent," provided that the agency's analysis of 11 enumerated factors reveals that "the waste is capable of posing a substantial present or potential hazard to human health or the environment when improperly . . . managed." 40 C.F.R. § 261.11(a)(3).

20. EPA must classify substances as hazardous waste if they satisfy criteria indicating they "may" pose a hazard to human health or the environment. 42 U.S.C. § 6903(5).

21. As the General Accounting Office observed over thirty years ago, "[t]he first steps to successful nationwide management of hazardous waste are identifying which wastes present a clear threat to human health and the environment and then expeditiously bringing these wastes under regulatory control."[1]

22. Under RCRA, EPA has broad authority to prescribe all regulations necessary to "promote improved solid waste management techniques" and "assur[e] that hazardous waste practices are conducted in a manner which protects human health and the environment." 42 U.S.C. § 6902(a)(1), (4); *see id.* § 6921(a).

---

[1] U.S. Gov't Accountability Off., GAO/RCED-88-115, Hazardous Waste: New Approach Needed to Manage the Resources Conservation and Recovery Act 17, https://www.gao.gov/assets/rced-88-115.pdf.

23. Classifying PVC as hazardous waste would require EPA to revise regulations and guidelines to reduce the significant threats to human health and the environment arising from the improper disposal of this hazardous plastic trash.

24. RCRA empowers any person to seek further regulation of hazardous wastes, including the listing of a substance as a hazardous waste, by petitioning EPA "for the promulgation, amendment or repeal of any regulation under [the Act]." 42 U.S.C. § 6974(a). EPA must "take action" with respect to petitions "within a reasonable time following receipt." *Id.* EPA must also "publish notice of such action in the Federal Register, together with the reasons therefor." *Id.*

25. RCRA authorizes any person to file suit against EPA to compel the completion of any nondisrectionary duty. *Id.* § 6972(a)(2).

### Administrative Procedure Act

26. Pursuant to the APA, any interested person has "the right to petition for the issuance, amendment, or repeal" of an agency rule. 5 U.S.C. § 553(e). Subsequently, an agency has the duty to promptly answer such a petition. *Id.* § 555(e).

27. The APA provides for judicial review of agency actions, 5 U.S.C. § 702, and requires that a court "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

### FACTUAL BACKGROUND

28. Polyvinyl chloride, also called "PVC" or "vinyl," is found in thousands of products ranging from food packaging to building materials to children's toys. Many Americans use PVC products every day without realizing the threat they pose to the environment and their own health.

29. PVC products contain vinyl chloride, a substance EPA acknowledges is a human carcinogen, as well as significant concentrations of chemical additives, such as phthalate plasticizers, known to have toxic, carcinogenic, and mutagenic effects on humans and other life forms. Exposure to vinyl chloride, phthalate plasticizers, and other chemical additives is associated with a broad array of developmental and behavioral abnormalities in humans, fish, and wildlife.

30. Recent studies reveal that finished PVC products leach significant concentrations of these compounds into the environment as they deteriorate with age, threatening severe biological consequences. Substantial scientific evidence shows that the widespread mismanagement of discarded PVC has distributed toxic chemicals throughout our environment, threatening ecosystem health and endangering vulnerable portions of the human population.

31. For example, phthalate plasticizers are not chemically bound to PVC and enter the environment naturally as discarded plastics deteriorate with age. High concentrations of these compounds seep into soil and groundwater following conventional landfill disposal, ultimately collecting in aquatic ecosystems and entering the food web. As a result of their widespread use and significant ability to migrate, human exposure to multiple phthalate plasticizers is virtually universal, beginning in the womb and continuing throughout life, raising concerns about negative health consequences at every age.

32. Mounting scientific evidence links phthalate exposure to a broad array of health and behavioral problems among humans and wildlife. Evidence shows that low levels of prenatal phthalate exposure influence fetal hormone regulation, resulting in abnormal development of the brain and reproductive organs. Ingestion of contaminated breast milk interferes with androgenic hormone production in male infants—potentially affecting sexual development—and childhood

exposure may contribute to rising rates of attention deficit hyperactivity disorder, asthma, and obesity. Among adult men, high concentrations of phthalate plasticizers correlate with poor semen quality, abdominal obesity, and insulin resistance. Exposed women may be more likely to suffer pregnancy complications and contract diabetes. In addition, scientific studies indicate that phthalate plasticizers may have carcinogenic effects in the liver and other organs.

33. According to recent estimates, Americans discard over seven billion pounds of PVC each year. There are no regulations regarding the disposal of discarded PVC, allowing it to be thrown away in the same manner as orange rinds and newspapers. Experts anticipate that annual waste generation will increase significantly in the near future as durable products and construction goods reach the end of their useful lives. Disposal of PVC material poses a grave danger to the American public.

34. Designation of PVC as a hazardous waste under RCRA would result in promulgation of a comprehensive regulatory scheme to ensure protection of human health and the environment. These safeguards would include standards applicable to generators and transporters; requirements regarding storage and disposal; and an extensive "cradle to grave" manifest system to track the generation, transport, and receipt of hazardous wastes.

35. Because new scientific information indicates that PVC satisfies EPA's criteria for hazardous waste, 40 C.F.R. § 261.11(a)(3), the Center submitted a petition on July 24, 2014, requesting the agency exercise its authority under RCRA to designate discarded PVC as hazardous waste. The Center also requested the agency revise its solid waste management guidelines to reduce the threats to human health and the environment arising from the improper disposal of PVC. The Center's petition provided extensive scientific information on the threats

posed by PVC and its constituent components and analyzed the eleven regulatory factors that EPA evaluates in all hazardous waste designations. *See id.*

36. In addition, the Center's petition asked EPA to regulate PVC pursuant to its authority under the Toxic Substances Control Act ("TSCA"). On October 24, 2014, EPA responded to the TSCA portion of the Center's petition, denying the request to initiate rulemaking under TSCA. In its response, EPA stated that it continued to evaluate the Center's requests for action under RCRA.

37. EPA has failed to provide the Center with a substantive response granting or denying its rulemaking petition pursuant to RCRA, or otherwise act to designate discarded PVC as hazardous waste.

## CLAIMS FOR RELIEF

**Violation of the Resource Conservation and Recovery Act**

38. The Center realleges and incorporates, as if fully set forth herein, each and every allegation in the preceding paragraphs of this Complaint.

39. RCRA allows "any person" to petition the EPA for the "promulgation, amendment or repeal of any regulation" under the Act. 42 U.S.C. § 6974(a). The Center exercised this right when it submitted a petition to classify discarded PVC as hazardous waste.

40. EPA has a duty to promptly answer such a petition. 42 U.S.C. § 6974(a). RCRA mandates that EPA "shall take action with respect to such petition and shall publish notice of such action in the Federal Register, together with the reasons therefor" within a reasonable time following the receipt of such petition. *Id.*

41.     RCRA provides for judicial review against EPA when the agency has failed to perform a nondiscretionary duty under RCRA. 42 U.S.C. § 6972(a)(2). RCRA allows a court to order the completion of any nondiscretionary duty. *Id.*

42.     EPA has failed to formally respond to, or otherwise take action on, the Center's July 2014 petition to issue a rule regarding the classification of discarded PVC as hazardous waste. EPA's failure to take action on the Center's petition, and to publish notice of such action in the Federal Register, violates the agency's nondiscretionary duty under RCRA to respond to petitions within a reasonable time. 42 U.S.C. § 6974(a)

## Violation of the Administrative Procedure Act

43.     The Center realleges and incorporates, as if fully set forth herein, each and every allegation in the preceding paragraphs of this Complaint.

44.     EPA's failure to respond to the Center's petition alternatively constitutes agency action that is unreasonably delayed and/or unlawfully withheld under the APA. 5 U.S.C. § 706(1). Pursuant to the APA, any interested person has the right to petition for the "issuance, amendment, or repeal of any agency rule." *Id.* § 553(e). The APA mandates that EPA respond to such a petition "within a reasonable time," *id.* § 555(b), and requires a court to "compel agency unlawfully withheld or unreasonably delayed." *Id.* § 706(1). Because EPA has failed to respond to the Center's 2014 petition, its failure is a violation of the agency's duty to respond to a petition for rulemaking in a timely manner. *Id.* §§ 555(b), 706(1).

## PRAYER FOR RELIEF

For the reasons stated above, the Center respectfully requests that the Court:

1.     Declare that EPA has violated its duty under RCRA by failing to take action on the Center's petition within a reasonable timeframe, 42 U.S.C. § 6974(a), or alternatively, declare

that EPA's failure to respond to the Center's petition constitutes agency action unlawfully withheld or unreasonably delayed under the APA, 5 U.S.C. §§ 555(b), 706(1);

2. Order EPA to act on the Center's petition for issuance of a rule classifying discarded PVC as hazardous waste and revising its solid waste management guidelines to reduce the threats from the improper disposal of PVC, and publish notice of such action in the Federal Register as RCRA requires, 42 U.S.C. § 6974(a);

3. Award the Center its costs of litigation, including reasonable attorneys' fees; and

4. Grant the Center such other relief as the Court deems just and proper.

DATE: August 19, 2021                 Respectfully submitted,

                                      s/ *Kristen Monsell*
                                      Kristen Monsell (DC Bar No. CA00060)
                                      Emily Jeffers (CA Bar No. 274222)*
                                      Center for Biological Diversity
                                      1212 Broadway, Suite 800
                                      Oakland, CA 94612
                                      Phone: (510) 844-7100
                                      Email: kmonsell@biologicaldiversity.org
                                      Email: ejeffers@biologicaldiversity.org

                                      *Application for admission pro hac vice forthcoming*

                                      *Attorneys for Plaintiff*